**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

*********************************

_____
Docket Number

*********************************

SUBMITTED BY: Plaintiff_____ Defendant_____ DOJ _____
Name:_____
Firm Name:_____
Address:_____
_____
Phone Number:_____
E-Mail Address:_____

INDICATE UPON THE PUBLIC DOCKET SHEET: YES_____ NO_____
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**A) If pursuant to a prior Court Order**:
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

_____

**B) If a _new_ application,** the statute, regulation, or other legal basis that authorizes filing under seal

_____

_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,**
**AND MAY _NOT_ BE UNSEALED UNLESS ORDERED BY**
**THE COURT.**
                                        05-19-20
DATED:                                              , NEW YORK

_____

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                                                        DATE

**MANDATORY CERTIFICATION OF SERVICE**:
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ____This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

_____                    _____
        DATE                                          SIGNATURE

KDE:JPM/ELM
F. #2020R00003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

DALMACIO FRANCISCO, M.D., and
MICHAEL OTHMAN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT AND
COMPLAINT IN SUPPORT OF
APPLICATION FOR ARREST
WARRANTS

(21 U.S.C. § 846)

20-MJ-380

EASTERN DISTRICT OF NEW YORK, SS:

        STEVEN SOO HOO, being duly sworn, deposes and states that he is a Special

Agent with the Drug Enforcement Administration, duly appointed according to law and

acting as such.

        In or about and between April 2018 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DALMACIO FRANCISCO, M.D., and MICHAEL OTHMAN, together with

others, did knowingly and intentionally conspire to distribute and possess with intent to

distribute one or more controlled substances, outside the usual course of professional

medical practice and not for a legitimate medical purpose, which offense involved

oxycodone, a Schedule II controlled substance, contrary to Title 21, United States Code,

Section 841(a)(1).

      (Title 21, United States Code, Sections 846 and 841(b)(1)(C))

The source of your deponent's information and the grounds for his belief are as follows:

1.      I have been a Special Agent with the Drug Enforcement Administration ("DEA") for approximately 11 years.   I am assigned to the Tactical Diversion Squad with the New York Division of the DEA.   I work in conjunction with the New York Drug Enforcement Task Force (the "Task Force").   In connection with my official duties as a Special Agent, I investigate criminal violations of federal laws, including the unlawful manufacture and distribution of controlled substances, and the diversion of legally-manufactured controlled substances into the illicit market.   I have had experience investigating cases in which Schedules II through V controlled substances have been purchased from complicit doctors and medical professionals and distributed, directly and indirectly, to abusers of those substances.   I have also been involved in numerous investigations involving the diversion of pharmaceutical drugs for recreational use.   I have also investigated cases involving the theft of prescription pads, the diversion of controlled substances, the forgery of prescriptions and doctor shopping cases (i.e., cases in which an individual visits one or more doctors and obtains multiple prescriptions for a controlled substance).   During my tenure at the DEA, I have also interviewed witnesses, conducted physical surveillance and executed search warrants, including search warrants on computer devices and at suspects' residences and businesses.

2.      I am familiar with the facts and circumstances of this investigation from, among other ways: (a) my personal participation in this investigation; (b) reports made to me by other law enforcement officers involved in the criminal investigation; (c) physical surveillance; and (d) my review of other records, reports and publicly-available or open

source information.   Where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

3.       This affidavit is intended to show only that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter.

I.       The Prescribing and Distribution of Oxycodone

4.       The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 et seq., governs the manufacture, distribution and dispensing of controlled substances in the United States.   With limited exceptions for medical professionals, the CSA makes it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance, or conspire to do so.

5.       The CSA and regulations promulgated thereunder classify controlled substances in five schedules.   Schedule I drugs, including, for example, heroin and LSD, do not have an acceptable medical use in the United States.   Schedule II through Schedule V controlled substances have acceptable medical uses.   The medical use of Schedule II controlled substances, including oxycodone and hydrocodone, is severely restricted because such drugs have a high abuse potential.

6.       Oxycodone is classified as a Schedule II controlled substance.   See 21 C.F.R. § 1308.12(b)(1)(xiii).   Oxycodone, sometimes prescribed under brand names, is used to treat severe pain.   Oxycodone, as with other opioids, is highly addictive.

7.       I know from my training and experience in investigations involving the illegal distribution and diversion of controlled substances that it is commonly known that

oxycodone is a drug with a significant risk of diversion, is frequently abused, and is sought for non-legitimate medical purposes.

8.     Medical practitioners, such as physicians, who are authorized to prescribe controlled substances by the jurisdiction in which they are licensed to practice are authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they are registered with the Attorney General of the United States.   See 21 U.S.C. § 822(b). Upon application by the practitioner, the DEA assigns a unique registration number to each qualifying medical practitioner, including physicians.

9.     Chapter 21 of the Code of Federal Regulations, Section 1306.04 governs the issuance of prescriptions by DEA-regulated practitioners and provides, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."   Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

10.     The foregoing Controlled Substances Act scheduling system is supplemented by individual States according to local needs and conditions.   In New York State, a physician can only prescribe Schedules II through V drugs on an official New York State prescription.   Information concerning transactions involving controlled substances, including Schedule II drugs, is transmitted to state authorities, via computer, when the drugs are dispensed by a pharmacist.

11.    Prescriptions written by physicians are written on what are commonly referred to as prescription pads.    A doctor who is licensed by the State of New York and the DEA to write controlled substance prescriptions may order pre-printed prescription pads. Each pad contains 100 prescriptions (each with a unique serial number), the doctor's name, a bar code, the doctor's license number and the address used by the doctor on his/her DEA registration and his/her DEA registration number.    The doctor issuing the prescription must fill in, among other things, the patient's full name and address, the drug name, strength, dosage form, date prescribed, quantity dispensed and directions for use.    The New York State Department of Health has mandated that all prescriptions be filed electronically via Electronic Prescribing, commonly referred to as "e-scribing", unless a doctor has been granted a waiver for a limited list of reasons, for a limited period of time.    This mandate has been in effect since 2016.

12.    "The refilling of a prescription for a controlled substance listed in Schedule II is prohibited" by federal regulation.[1]    21 C.F.R. § 1306.12(a); see also 21 U.S.C. § 829(a).    The practical effect of this prohibition is that a doctor who is renewing a prescription for a Schedule II controlled substance must reevaluate the patient's need for that medication prior to issuing a new prescription.

---

[1] Under specified circumstances, a doctor may issue multiple prescriptions allowing a patient to receive up to a 90-day supply of a Schedule II controlled substance.    See 21 C.F.R. § 1306.12(b).

II.    <u>Overview</u>

13.    DEA agents and other law enforcement officers have been investigating the defendants DALMACIO FRANCISCO, M.D., and MICHAEL OTHMAN, among others, for the illegal distribution and diversion of oxycodone tablets prescribed by FRANCISCO.   As described below, FRANCISCO, a medical doctor, has consistently prescribed large quantities of oxycodone in the name of OTHMAN and in the names of various "patients" recruited by OTHMAN whose prescriptions are then diverted for illicit resale.   Among other things, during the investigation, law enforcement officers discovered that FRANCISCO wrote and OTHMAN filled prescriptions in the names of individuals who were incarcerated at the times FRANCISCO issued the prescriptions.   Additionally, recent surveillance by law enforcement officers has identified that, although FRANCISCO's medical office has been closed during the COVID-19 pandemic, FRANCISCO has continued to regularly meet alone with OTHMAN to provide written or electronic prescriptions in the names of "patients" who work with OTHMAN.   Law enforcement officers have identified numerous instances in which the "patients" recruited by OTHMAN did not visit FRANCISCO's medical offices on the day their prescriptions were written; instead, OTHMAN met FRANCISCO and obtained multiple prescriptions from FRANCISCO for the various "patients."   OTHMAN then traveled to pharmacies in and around Queens, New York, to fill or direct the filling of the prescriptions.

14.    It was a part of the conspiracy that the defendant DALMACIO FRANCISCO, M.D., consistently wrote monthly prescriptions for the defendant MICHAEL OTHMAN's "patients" consisting of 180 tablets of 30 milligram ("mg"), immediate-release oxycodone.   This dosage equates to 270 morphine milligram equivalents ("MME") per day.

Based on my training and experience and involvement in opioid diversion investigations, I know that MME is a value which describes the potency of various opioids. FRANCISCO's prescribed dosages of approximately 270 MME daily, which prescribing records show he has in some instances issued to "patients" such as OTHMAN on a monthly basis for the past five years, consistently exceeded federal and state guidelines for appropriate prescribing of oxycodone. For example, I know that the Centers for Disease Control and Prevention ("CDC") guidelines advise that the risk of overdose death significantly increases for patients prescribed more than 50 MME per day and advise practitioners to "avoid or carefully justify increasing dosage to" greater than or equal to 90 MME per day.

15.     It was further a part of the conspiracy that the defendant MICHAEL OTHMAN and the "patients" he recruited used cash, instead of health insurance or Medicaid, to pay for the filling of illicit prescriptions written by the defendant DALMACIO FRANCISCO, M.D. Based on my training and experience and involvement in opioid diversion investigations, I know that this tactic is used by individuals unlawfully diverting medicine to, among other things, avoid detection by insurance companies.

III.     The Defendants

16.     Based on my review of DEA registration forms and public source information, I know that the defendant DALMACIO FRANCISCO, M.D., has been a licensed medical doctor in the State of New York since at least in or about 1995. Based on surveillance by law enforcement officers and public source records, I know that FRANCISCO is a resident of Jamaica, New York, who maintains a medical office at 57-18 Woodside Avenue, Queens, New York 11377 (the "Woodside Office") and another medical office at 86-15 Queens Boulevard, Elmhurst, New York (the "Elmhurst Office"). DEA

records indicate that FRANCISCO is authorized to prescribe Schedule II through V controlled substances.

17.     Based on my review of arrest records, prescription records, physical surveillance and public source information, I know that the defendant MICHAEL OTHMAN is a resident of Astoria, New York who has obtained prescriptions for oxycodone from the defendant DALMACIO FRANCISCO, M.D., since at least in or about April 2015.   Between April 2015 and the present, OTHMAN has received approximately 59 oxycodone prescriptions, written approximately monthly, from FRANCISCO.   Since in or about December 2016, each prescription written by FRANCISCO to OTHMAN has been for 180 30mg tablets of oxycodone.   Based on the pattern of prescribing, I know from my training and experience and involvement in opioid diversion investigations, that a prescription of 180 30mg tablets of oxycodone is significantly above recommended guidelines for prescribing opioids.   From my review of prescription records, I know that the oxycodone being prescribed by FRANCISCO is generally "immediate release," i.e., fast acting, and I know that the 30mg tablet is the largest dose of immediate release oxycodone available for retail sale in the United States.   Based on my knowledge of oxycodone trafficking, I know that 30mg, immediate release oxycodone tablets are in high demand by users and abusers of unlawfully obtained opioids.

IV.   Prescriptions Written In the Names of Incarcerated Individuals

18.   Based on dispensed prescription data from the New York State
Department of Health, Bureau of Narcotic Enforcement ("BNE")[2], law enforcement agents
identified that the defendant DALMACIO FRANCISCO, M.D., issued numerous written
prescriptions to at least two incarcerated individuals between in or about 2018 and 2019.
Based on United States Bureau of Prisons ("BOP") records, a male individual whose identity
is known to the undersigned ("Person A") was incarcerated continuously by the BOP
between in or about April 2018 and May 2019.   During the period of Person A's
incarceration, FRANCISCO issued at least 12 written prescriptions in the name of Person A
for 180 30mg tablets of oxycodone.   All of the prescriptions written in the name of Person A
during the period of his incarceration were filled at a pharmacy located in Queens, New York
("Pharmacy #1").   BNE records further show that FRANCISCO continued writing
prescriptions in the name of Person A through in or about December 2019, which were also
filled at Pharmacy #1.

19.   For instance, based on BNE records, on or about September 4, 2019,
one of the oxycodone prescriptions written by the defendant DALMACIO FRANCISCO,
M.D., to Person A was filled at Pharmacy #1.   Law enforcement officers obtained
surveillance video and prescription filling information from Pharmacy #1 for September 4,

---

[2]   BNE is responsible for maintaining records of all controlled substance
prescriptions filled at pharmacies in New York State.   BNE records contain the following
information: (a) the serial number found on the paper prescription; (b) the date the
prescription was written; (c) the date the prescription was filled; (d) the name of the
prescribing physician; (e) the type and quantity of drug prescribed; (f) the name of the
patient; (g) the method of payment; and (h) the pharmacy at which the prescription was
filled.   E-prescriptions have no unique serial number.

2019, which showed a male individual whose identity is known to the undersigned ("Co-Conspirator #1")[3] filling the prescription in the name of Person A. I have reviewed the surveillance video taken from September 4, 2019, and determined that Co-Conspirator #1 is not Person A by comparing known law enforcement photographs of Person A to visual images of Co-Conspirator #1, as seen on surveillance video. A subsequent review of surveillance video and pharmacy records from Pharmacy #1 shows that Co-Conspirator #1 also filled prescriptions written by FRANCISCO and in the name Person A on or about October 4, 2019, November 5, 2019 and December 2, 2019.

20. According to New York State Department of Corrections records, a male individual whose identity is known to the undersigned ("Person B") was incarcerated at the Altona Correctional Facility, in Altona, New York, between on or about October 18, 2018 and August 15, 2019. Based on BNE records, on or about July 13, 2019, an oxycodone prescription in the name of Person B was written by the defendant DALMACIO FRANCISCO, M.D. Law enforcement officers obtained video surveillance footage from Pharmacy #1 from July 13, 2019, and determined that the defendant MICHAEL OTHMAN, whose appearance on this video surveillance I recognize from known law enforcement photographs of OTHMAN, had presented Person B's prescription at Pharmacy #1 to be

---

[3] Based on my review of BNE records, FRANCISCO has also written prescriptions in the name of Co-Conspirator #1 since at least in or about December 2017. Between December 2017 and the present, FRANCISCO has written approximately 30 oxycodone prescriptions in the name of Co-Conspirator #1, approximately monthly. Since in or about December 2017, each prescription written by FRANCISCO in the name of Co-Conspirator #1 has been for 180 30mg tablets of oxycodone.

filled.[4]   Based on records obtained from Pharmacy #1, on or about July 13, 2019, OTHMAN also presented a prescription written by FRANCISCO in the name of another male individual whose identity is known to the undersigned ("Co-Conspirator #2")[5] to be filled.   A further review of BNE records show that prior to July 13, 2019, additional prescriptions written by FRANCISCO in the name of Person B and Co-Conspirator #2 were written and filled on the same dates, including on or about February 20, 2019, March 18, 2019, April 17, 2019, May 17, 2019, and June 17, 2019.   Again, according to New York State prison records, Person B was incarcerated on each of the dates these prescriptions were written by FRANCISCO. Based on this pattern, I believe that OTHMAN also filled the earlier prescriptions written in the name of Person B and Co-Conspirator #2.

## V.   Prescriptions Issued During the COVID-19 Pandemic

21.   According to, among other things, BNE records, between March 2020 and the present, the defendant MICHAEL OTHMAN has continued to obtain and fill oxycodone prescriptions in the names of other persons, including Person B, Co-Conspirator #1, Co-Conspirator #2 and others described below, all of which were written by the defendant DALMACIO FRANCISCO, M.D., during the COVID-19 pandemic.   Based on law enforcement officers' surveillance of FRANCISCO's Woodside Office and Elmhurst

---

[4] Pharmacy #1 filled the prescription on July 15, 2019.

[5] Based on review of BNE records, FRANCISCO has written prescriptions in the name of Co-Conspirator #2 since at least in or about August 2017.   Between August 2017 and the present, approximately 32 oxycodone prescriptions in the name of Co-Conspirator #2 have been written, approximately monthly, by FRANCISCO.   Since in or about May 2018, each prescription written by FRANCISCO to Co-Conspirator #2 was for 180 30mg tablets of oxycodone.

Office, and from signs posted on the doors to FRANCISCO's offices, the medical offices

have been closed since at least on or about March 18, 2020, apparently on account of the

COVID-19 pandemic.

22.     As set forth below, physical surveillance, video surveillance from a

pole camera located outside of the Woodside Office, toll records and phone location records[6]

show that the defendant MICHAEL OTHMAN has repeatedly traveled to the Woodside

Office and met with the defendant DALMACIO FRANCISCO, M.D., to obtain the

prescriptions in the names of Person B, Co-Conspirator #1, Co-Conspirator #2, and three

additional male individuals whose identities are known to the undersigned ("Co-Conspirator

#3,"[7] "Co-Conspirator #4,"[8] and "Co-Conspirator #5"[9]).

---

[6] All references herein to telephone location data refer to information obtained from telephone carriers pursuant to judicially authorized search warrants for such information.

[7] Based on a review of BNE records, FRANCISCO has written prescriptions in the name of Co-Conspirator #3 since at least in or about July 2019.   Between July 2019 and the present, FRANCISCO has written approximately 10 oxycodone prescriptions in the name of Co-Conspirator #3, approximately monthly.   Since in or about September 2019, each prescription written by FRANCISCO in the name of Co-Conspirator #3 was for 180 30mg tablets of oxycodone.

[8] Based on a review of BNE records, FRANCISCO has written prescriptions in the name of Co-Conspirator #4 since at least in or about February 2015.   Between February 2015 and the present, FRANCISCO has written approximately 70 oxycodone prescriptions in the name of Co-Conspirator #4, approximately monthly.   Since in or about September 2016, each prescription written by FRANCISCO in the name of Co-Conspirator #4 was for 180 30mg tablets of oxycodone.

[9] Based on a review of BNE records, FRANCISCO has written prescriptions in the name of Co-Conspirator #5 since at least in or about July 2018.   Between July 2018 and the present, FRANCISCO has written approximately 23 oxycodone prescriptions in the name of Co-Conspirator #5, approximately monthly.   Since in or about December 2018, each prescription written by FRANCISCO in the name of Co-Conspirator #5 was for 180 30mg tablets of oxycodone.

A.    March 16, 2020

23.    For instance, on or about March 16, 2020, law enforcement officers observed the defendant MICHAEL OTHMAN arrive outside of the defendant DALMACIO FRANCISCO, M.D.'s Woodside Office in a black GMC Yukon.   Officers observed Co-Conspirator #4 leave from the front passenger seat of OTHMAN's vehicle and enter the building of the Woodside Office at approximately 11:54 a.m.   OTHMAN then drove his vehicle further up the street, parked and entered FRANCISCO's office at approximately 12:01 p.m.   Co-Conspirator #4 and OTHMAN left from FRANCISCO's office at approximately 12:32 p.m. and 12:42 p.m., respectively.   At approximately 1:30 p.m. that day, based on surveillance video obtained from Pharmacy #1, OTHMAN presented two prescriptions dated March 16, 2020 written by FRANCISCO in the names of Person B and Co-Conspirator #2 for 180 30mg oxycodone tablets each.   After presenting the prescriptions in Pharmacy #1, OTHMAN returned to his GMC Yukon and then drove to a pharmacy located near Ditmars Boulevard in Queens, New York ("Pharmacy #2").   Law enforcement officers observed Co-Conspirator #4 exit from the GMC Yukon and enter Pharmacy #2. Based on BNE records, that same day, March 16, 2020 Co-Conspirator #4 filled a prescription for 180 30mg oxycodone tablets issued by FRANCISCO at Pharmacy #2.

B.    April 13, 2020

24.    As another example, according to BNE records and records provided by Pharmacy #1, on or about April 13, 2020, at approximately 12:05 p.m., Pharmacy #1 received an electronic prescription from the defendant DALMACIO FRANCISCO, M.D., in the name of Person B for 180 30mg oxycodone tablets.   Based on pole camera video of the area outside of the Woodside Office, on April 13, 2020, at approximately 11:37 a.m. (about

30 minutes prior to Person B's prescription being issued), the defendant MICHAEL OTHMAN arrived outside of the Woodside Office in his black GMC Yukon.   OTHMAN left the GMC Yukon and entered the building of the Woodside Office alone.   Pole camera video showed that OTHMAN left the office at approximately 12:32 p.m.   After leaving FRANCISCO's Woodside Office, OTHMAN returned alone to his black GMC Yukon. During this period of time, Person B was not seen on video entering or exiting from FRANCISCO's Woodside Office.   Additionally, pen register data for a phone number used by Person B showed that OTHMAN called Person B at 12:08 p.m. and 12:10 p.m., and sent a text message to Person B at 12:08 p.m.   Based on my training, experience and involvement in the investigation, I believe that these calls and messages from OTHMAN to Person B show that Person B was not present with OTHMAN inside of FRANCISCO's office.   Based on phone location information obtained for FRANCISCO's cellular telephone, FRANCISCO's cell phone was located in the vicinity of FRANCISCO's Woodside office near the time the prescription was issued, thus indicating that FRANCISCO was present in his office when the prescription was electronically sent to the pharmacy.

   25. Later that same day, after leaving the defendant DALMACIO FRANCISCO, M.D.'s Woodside Office, phone location information for the defendant MICHAEL OTHMAN's cellular phone showed that OTHMAN traveled to a pharmacy located near the Dutch Kills area of Long Island City, New York ("Pharmacy #3") and then to Pharmacy #2.   BNE records showed that oxycodone prescriptions written on April 13, 2020, by FRANCISCO in the name of Co-Conspirator #5 and Co-Conspirator #4 (both 180 30mg tablets of oxycodone) were filled at Pharmacy #3 and Pharmacy #2, respectively, that same day.   Based on my training, experience and involvement in this investigation, I believe

OTHMAN obtained prescriptions for at least Person B, Co-Conspirator #4 and

Co-Conspirator #5 when he visited FRANCISCO's Woodside Office on April 13, 2020, and,

consistent with prior surveillance, then traveled to the various pharmacies to monitor the

filling of the prescriptions and/or fill them himself.

    C.    <u>April 14, 2020</u>

    26.    Similarly, on or about April 14, 2020, law enforcement officers

conducted surveillance of Pharmacy #1.  Based on pen register data, Person B called the

defendant MICHAEL OTHMAN at approximately 12:04 p.m., and multiple times between

12:41 p.m. and 1:33 p.m.  Phone location data for OTHMAN's cellular phone showed that

between approximately 1:11 p.m. and 1:41 p.m., OTHMAN traveled from his residence in

Astoria, Queens, stopped in the area of Northern Boulevard in Woodside, Queens, and then

continued to Pharmacy #1.  Based on law enforcement officers' surveillance, at

approximately 1:38 p.m., OTHMAN arrived in a black GMC Yukon outside of Pharmacy #1.

Person B exited from the GMC Yukon's front passenger seat and then entered Pharmacy #1.

Person B left Pharmacy #1 approximately five minutes later and reentered the GMC Yukon.

Based on records provided by Pharmacy #1, Person B filled the prescription electronically

written in his name by the defendant DALMACIO FRANCISCO, M.D., on April 13, 2020.

    D.    <u>April 16, 2020</u>

    27.    On or about April 16, 2020, pole camera video from outside of the

defendant DALMACIO FRANCISCO, M.D.'s Woodside Office showed that the defendant

MICHAEL OTHMAN's black GMC Yukon arrived outside of the office at approximately

11:08 a.m.  OTHMAN was observed on video leaving the GMC Yukon's driver's seat and

entering FRANCISCO's Woodside Office building.  Co-Conspirator #2 was also seen on

video footage getting out of the front-passenger seat of OTHMAN's GMC Yukon and waiting by the vehicle. While Co-Conspirator #2 was waiting outside the vehicle, a white Nissan Altima arrived at the location and double-parked next to the black GMC Yukon. Co-Conspirator #2 met briefly with the driver of the Nissan Altima and appeared to conduct what the officers believe was a hand-to-hand drug transaction. Co-Conspirator #2 then returned to the front passenger seat of the GMC Yukon. At approximately 11:59 a.m., OTHMAN exited from the building in which FRANCISCO's office is located and returned to the GMC Yukon.

28. A subsequent New York State Department of Motor Vehicles check for the Nissan Altima showed it was subscribed to by a female individual whose identity is known to the undersigned ("Person C"). According to pen register data for one of OTHMAN's cellular phones, OTHMAN had communicated six times with a phone number subscribed to by Person C between 10:33 a.m. and 11:20 a.m. earlier that day. Based on my training and experience and involvement in this investigation, I believe OTHMAN communicated with Person C to arrange the sale of narcotics, and the meeting between Co-Conspirator #2 and Person C near FRANCISCO's Woodside Office was for the purpose of conducting the drug transaction arranged by OTHMAN.

29. The same day, on or about April 16, 2020, a prescription written in the name of Co-Conspirator #2 was filled at a pharmacy located near Broadway in Long Island City, New York ("Pharmacy #4"). As described above, based on pole camera video, Co-Conspirator #2 did not enter the defendant DALMACIO FRANCISCO, M.D.'s Woodside Office on April 16, 2020, when the prescription to him was written by FRANCISCO, instead engaging in the apparent hand-to-hand drug transaction.

Accordingly, I believe FRANCISCO provided the prescription directly to the defendant MICHAEL OTHMAN and conducted no medical evaluation of Co-Conspirator #2, and, thus, I further believe this shows FRANCISCO's knowledge that OTHMAN oversees the "patients" who ultimately divert the prescriptions written by FRANCISCO for the purpose of illicit drug trafficking.

      E.    <u>April 24, 2020</u>

      30.    On or about April 24, 2020, at approximately 10:08 a.m., pole camera surveillance video from outside of the Woodside Office shows that the defendant MICHAEL OTHMAN's black GMC Yukon was parked on the street near the defendant DALMACIO FRANCISCO M.D.'s Woodside Office.   At approximately 10:34 a.m., OTHMAN left the GMC Yukon to pay a parking meter and then entered the Woodside Office building alone. At approximately 11:00 a.m., OTHMAN exited the office and returned to his GMC Yukon and then drove away from the area.   According to BNE data, that day, a prescription written by FRANCISCO in the name of Co-Conspirator #1 for 180 30mg oxycodone tablets was filled at a pharmacy located near Ditmars Boulevard and Steinway Street in Queens, New York ("Pharmacy #5").   Phone location data for OTHMAN's cellular phone indicated he was in the vicinity of Pharmacy #5 between 11:28 a.m. and 11:31 a.m. that day.   Based on OTHMAN's presence in FRANCSICO'S office and then, immediately thereafter, at Pharmacy #5, where the electronic prescription was sent and filled, I believe OTHMAN again arranged with FRANCISCO to issue a prescription for the purpose of oxycodone diversion.

F.     April 30, 2020

31.     On or about April 30, 2020, at approximately 2:38 p.m., pole camera video from the area outside the Woodside Office showed that the defendant MICHAEL OTHMAN's black GMC Yukon arrived at the office.   After parking, the video showed OTHMAN enter the Woodside Office building at approximately 2:40 p.m.   According to phone location data for two cellular phones subscribed to FRANCISCO, both devices were located in the area of FRANCISCO's Woodside Office during the time OTHMAN was at the Woodside Office.   At approximately 2:57 p.m. on April 30, 2020 – i.e., while OTHMAN was inside the Woodside Office – Pharmacy #1 received an electronic prescription in the name of Co-Conspirator #3 written by FRANCISCO for 180 30mg oxycodone tablets. OTHMAN left from the Woodside Office at approximately 3:04 p.m.

32.     Pen register data showed that a cellular phone subscribed to by Co-Conspirator #3 called Pharmacy #1 at 3:13 pm.   Based on phone location data for Co-Conspirator #3's phone, it was located near Co-Conspirator #3's residence during the entire day of April 30, 2020.   Based on the pole camera images, phone location data, pen-register records and the prior pattern of behavior by the defendant MICHAEL OTHMAN and his co-conspirators, among other things, I believe Co-Conspirator #3 did not visit the defendant DALMACIO FRANCISCO, M.D.'s office on April 30, 2020, and had no phone contact with FRANCISCO, prior to FRANCISCO issuing the prescription for oxycodone tablets.   By issuing the prescription while OTHMAN (and not Co-Conspirator #3) was in the Woodside Office, I further believe this shows FRANCISCO's knowledge that OTHMAN oversees the "patients" who ultimately come to FRANCISCO for oxycodone prescriptions that FRANCISCO knows are being diverted.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the defendants DALMACIO FRANCISCO, M.D., and MICHAEL OTHMAN so that they may be dealt with according to law.

I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrants. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and arrest warrants via the internet. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendants an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence and change patterns of behavior.

_____
STEVEN SOO HOO
Special Agent, Drug Enforcement Administration

Sworn to before me by telephone this
_19__ day of May, 2020

s/Steven M Gold
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 20-MJ-380 |
| DALMACIO FRANCISCO, | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     DALMACIO FRANCISCO                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment          ❏ Superseding Indictment          ❏ Information          ❏ Superseding Information          ☑ Complaint
❏ Probation Violation Petition          ❏ Supervised Release Violation Petition          ❏ Violation Notice          ❏ Order of the Court

This offense is briefly described as follows:

Conspiracy to distribute and possess with intent to distribute oxycodone, in violation of Title 21, United States Code, Section 846

Date:     05-19-20
_____                    _____
                                                                    *Issuing officer's signature*

City and state:     Brooklyn, New York                    Hon. Steven M. Gold, U.S.M.J.
                                                                    *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____               _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | |
| v. | ) | Case No. 20-MJ-380 |
| MICHAEL OTHMAN, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     MICHAEL OTHMAN                                                                     ,
who is accused of an offense or violation based on the following document filed with the court:

❐ Indictment  ❐ Superseding Indictment  ❐ Information  ❐ Superseding Information  ☑ Complaint
❐ Probation Violation Petition  ❐ Supervised Release Violation Petition  ❐ Violation Notice  ❐ Order of the Court

This offense is briefly described as follows:

Conspiracy to distribute and possess with intent to distribute oxycodone, in violation of Title 21, United States Code, Section 846

Date:     05-19-20

*Issuing officer's signature*

City and state:     Brooklyn, New York

Hon. Steven M. Gold, U.S.M.J.

*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____ Weight: _____

Sex: _____ Race: _____

Hair: _____ Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____